DARWIN *v.* CONNECTICUT.

No. 794, Misc.  Decided May 20, 1968.

*John F. Shea, Jr.,* for petitioner.
*Joel H. Reed II* and *Etalo G. Gnutti* for respondent.

PER CURIAM.

Petitioner was convicted of second degree murder and sentenced to life imprisonment.  The Connecticut Su-

preme Court affirmed the judgment. 155 Conn. 124, 230 A. 2d 573 (1967). Petitioner seeks a writ of certiorari from this Court. We grant the writ and reverse.

On Friday, December 6, 1963, petitioner was arrested on a coroner's warrant charging him with murder. During that entire day until 9 p. m. petitioner was subjected to questioning. Sometime that evening, the officer in charge brought in a revolving disc and sought to persuade petitioner to look at it and "relax." The trial judge said that "[the officer] was not completely unaware that this was a common hypnotic device." The wheel turned for about half an hour, but petitioner refused to look at it.

The next morning the questioning resumed and continued intermittently until about 4 p. m. when petitioner fell forward, according to the trial judge, "either fainting or pretending to faint." He was revived and then confessed to the murder, as hereinafter described, in response to questioning by the officer in charge.

During the entire period petitioner was in custody, his counsel had been making determined but unsuccessful efforts to contact him or the officer in charge of him. On Friday, December 6, there were 19 phone calls to various police offices, including nine to the one at which petitioner was held. On Saturday, there were five calls, and on Sunday, there was one.

On Friday, there was a personal visit by one of the lawyers to the police barracks in Stafford Springs where petitioner had been taken that morning. But at about the same time that counsel arrived, the officer in charge took petitioner from the barracks and drove him around, apparently to protect him from what the officer thought were newspapermen.[1] Counsel made four visits to various barracks on Saturday.

---

[1] When initially arrested, petitioner had asked to use the telephone but was not permitted to do so.

Each of these attempts was met with disclaimers of knowledge of the whereabouts of either petitioner or of the officer in charge. The trial judge found that it was "routine procedure" for investigating officers not to be disturbed during an investigation. At about 1 or 1:30 p. m. Saturday, at counsel's request, a superior court judge issued a writ of habeas corpus. A deputy sheriff was instructed to serve the writ upon the officer in charge of petitioner and upon the coroner within half an hour. The sheriff could not locate the officer or the coroner, although the purpose of this inquiry was stated to the communications officer at the Hartford barracks. On Sunday, the sheriff called the Stafford Springs barracks in search of the officer and received a call informing him that the officer would be at the superior court at 2 p. m.[2]

Petitioner's first confession, made orally after the "fainting" incident on the afternoon of Saturday, December 7, the second day of arrest and interrogation, was excluded from evidence by the trial judge. The trial judge also excluded petitioner's written confession made shortly thereafter. The trial judge, however, admitted a subsequent written confession made on Sunday, December 8, and evidence as to a partial re-enactment of the crime which petitioner staged on that day at the request of the police. During the course of this partial re-enactment, petitioner, as he had done intermittently during his custody, denied that he committed the crime. The Connecticut Supreme Court affirmed.

---

[2] The trial judge specifically found that the officer in charge knew petitioner was represented by counsel at the coroner's inquest just one day before his arrest, and that the officer called one of petitioner's lawyers on Sunday to inform him that there would be a presentment at 2 p. m. The trial judge also found that the officer did not know whether or not counsel were on a retainer basis or had been engaged only for the inquest.

Since the trial in this case began before the decisions of this Court in *Escobedo* v. *Illinois,* 378 U. S. 478 (1964), and *Miranda* v. *Arizona,* 384 U. S. 436 (1966), these cases are not controlling. *Johnson* v. *New Jersey,* 384 U. S. 719 (1966). But they are relevant on the issue of voluntariness. *Davis* v. *North Carolina,* 384 U. S. 737 (1966). In the present case, petitioner's lawyers made numerous attempts to communicate with petitioner or with the officer in charge. (Cf. *Escobedo* v. *Illinois, supra, Miranda* v. *Arizona, supra,* at 465, n. 35.) A writ of habeas corpus issued by a state judge at the request of petitioner's counsel was fruitless; and petitioner on three separate occasions sought and was denied permission to communicate with the outside world.

The inference is inescapable that the officers kept petitioner incommunicado for the 30 to 48 hours during which they sought and finally obtained his confession. See *Davis* v. *North Carolina, supra,* at 745–746; *Haynes* v. *Washington,* 373 U. S. 503 (1963). Considering the "totality of the circumstances" (see *Clewis* v. *Texas,* 386 U. S. 707 (1967)), we conclude that the court erred in holding that the confession and the partial re-enactment were voluntary. The denial of access to counsel and the outside world continued throughout, and there was "no break in the stream of events" from arrest throughout the concededly invalid confessions of Saturday, December 7, to the confession and re-enactment of Sunday, December 8, "sufficient to insulate" the final events "from the effect of all that went before." *Clewis* v. *Texas, supra,* at 710. See *Beecher* v. *Alabama,* 389 U. S. 35, 36, n. 2 (1967).

Accordingly, the motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted. The judgment below is reversed and the case

remanded for further proceedings not inconsistent with our decision herein.

MR. JUSTICE WHITE dissents.

MR. JUSTICE HARLAN, concurring in part and dissenting in part.

I am unable to agree with the basis on which the Court reverses petitioner's conviction. The courts of the State of Connecticut conducted a careful and conscientious review of the "totality of the circumstances" surrounding petitioner's three confessions. If the question in this case were simply whether the third confession was coercively extracted, I would vote to affirm. I cannot join the Court in what seems to me no more than a substitution of its view on a close factual question for that of the state courts.

In this case, however, a special element is present. The trial court ruled that the prosecution had not met its burden of proving that petitioner's first two confessions were voluntarily made. It then admitted his third confession. The Connecticut Supreme Court, affirming, evaluated petitioner's third confession by the rules that had been applied to the other two: finding that the atmosphere had changed enough to tip the balance in favor of voluntariness, it found this confession admissible. I do not think this reflected a proper approach to the problem of multiple confessions.

A principal reason why a suspect might make a second or third confession is simply that, having already confessed once or twice, he might think he has little to lose by repetition. If a first confession is not shown to be voluntary, I do not think a later confession that is merely a direct product of the earlier one should be held to be voluntary. It would be neither conducive to good police

work, nor fair to a suspect, to allow the erroneous impression that he has nothing to lose to play the major role in a defendant's decision to speak a second or third time.

In consequence, when the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has, in my view, the burden of proving not only that the later confession was not itself the product of improper threats or promises or coercive conditions, but also that it was not directly produced by the existence of the earlier confession. See *United States* v. *Bayer*, 331 U. S. 532, 540–541. Here, the facts as stated by the state courts fail to satisfy this additional burden. Petitioner's third confession followed the completion of his inadmissible second confession by only a few hours.* In the interval he appears to have talked to no one except his jailors and the coroner. There is no indication that he had any reason to think that a third confession would increase his peril. Since I would hold only that the state courts applied the wrong standard in this case, I would remand for further proceedings, in order to give the prosecution the opportunity to show that the third confession was not merely the product of the erroneous impression that the cat was already out of the bag.

---

*This Court indicates that the second confession occurred on Saturday and the third on Sunday. In fact, petitioner completed his signature on the second confession on Sunday morning and immediately thereafter agreed to re-enact the crime. After the re-enactment he dictated the third confession and had signed it by 1:50 Sunday afternoon. Although petitioner exhibited sporadic hesitation, the events of Sunday, as described by the Supreme Court of Connecticut, form a continuous sequence. The Connecticut courts rejected the argument that the Sunday completion of the signature on the Saturday confession was a "voluntary" adoption of that statement.