444 F.2d 519
 Harold L. RICHARDSON, Appellant,
v.
Louis S. NELSON, Warden, California State Prison, San
Quentin, California; Lester J. Pope,
Superintendent, California Correctional
Facility, Vacaville,
California, Appellees.
 No. 25077.
 United States Court of Appeals, Ninth Circuit.
 June 8, 1971.
 
 Patrick Lynch (argued), of O'Melveny & Myers, Los Angeles, Cal., for appellant.
 Russell Iungerich, Deputy Atty. Gen. (argued), Evelle J. Younger, Cal. Atty. Gen., Mark L. Christensen, Deputy Atty. Gen., Los Angeles, Cal., for appellees.
 Before BARNES, HAMLEY and HRFSTEDLER, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 Harold L. Richardson, in California penal custody under a 1954 conviction for armed robbery and murder, petitioned the district court for a writ of habeas corpus.[1] Following an evidentiary hearing at which Richardson was represented by appointed counsel, the district court denied the application. This appeal followed.
 
 
 2
 In the district court, Richardson contended that, at his state trial, he was denied his constitutional right, announced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to have the determination of the voluntariness of his extrajudicial statements made by other than the convicting jury. The district court upheld this contention.
 
 
 3
 According to Jackson, when such a violation is established, the appropriate procedure is to allow the state a reasonable time to afford the petitioner a hearing on the question of voluntariness or a new trial, failing which the petitioner is entitled to his release. Jackson v. Denno, 378 U.S. at 395-396, 84 S.Ct. 1774. In this case the district court chose to make its own determination on the question of voluntariness, and this course was apparently agreeable to the parties.
 
 
 4
 The district court held that the statements were the product of petitioner's free choice and were not involuntary. Richardson's challenge to this determination presents the only issue before us on this appeal.
 
 
 5
 In its memorandum and order, the district court announced that in arriving at its determination of voluntariness, it was 'applying the standards set out in Culombe v. Connecticut, 367 U.S. 568 (81 S.Ct. 1860, 6 L.Ed.2d 1037) * * * (1961) * * *.' Richardson attacks this standard as 'obsolete,' and urges that the application of that test requires reversal. He calls attention to more recent Supreme Court decisions passing upon the question of voluntariness in which great significance was attached to the prosecution's failure to honor defendant's requests for the assistance of counsel during prearraignment questioning, and to failure to advise defendant of his right to remain silent, and in which emphasis was placed upon the necessity of considering the totality of the circumstances.[2]
 
 
 6
 However, the Culombe court specifically referred to the denial of counsel and failure to advise the defendant of his rights as 'relevant' factors in determining voluntariness. The Court said that 'refusal to permit communication with friends and legal counsel at stages in the proceeding when the prisoner is still only a suspect,' and 'failure to caution a prisoner-- enjoined by the Judges' Rules'[3] must be considered. Culombe, at 601, 81 S.Ct. at 1878. While Culombe does not expressly articulate the 'totality of circumstances' concept, the opinion lists an extensive set of factors which are to be considered in the determination of voluntariness. Culombe, at 601-602, 81 S.Ct. 1860.
 
 
 7
 It may be, as Richardson urges, that the Supreme Court decisions since Culombe have become increasingly meticulous in the articulation of factors to be considered in determining voluntariness of extrajudicial statements. But we are convinced that the district court read and applied the Culombe test in a sufficiently broad manner to comport with the latest Supreme Court pronouncements in this field.
 
 
 8
 Richardson also argues that, applying the appropriate test, his 'confessions' were involuntary as a matter of law. Richardson gave the police four pretrial statements, the first two exculpatory and the last two inculpatory.[4] While Richardson, by referring to his 'confessions,' directly questions only the voluntariness of his last two pretrial statements, he also appropriately calls attention to the circumstances under which the two exculpatory statements were made, these being part of the totality of circumstances.
 
 
 9
 In arguing that the two inculpatory statements were involuntary as a matter of law, Richardson calls attention to the eleven factors listed in the margin.[5] To the extent that proof was offered concerning these factors, it consisted primarily of Richardson's testimony. Some of the factors were established without conflict in the evidence; as to others, the evidence is in conflict.
 
 
 10
 We have examined the entire record. It reveals that the witnesses had some difficulty in reconstructing events which had occurred more than fifteen years previously. Adding to this Richardson's obvious self-interest in presenting his own version of past events, and whatever assistance the district court judge gained from his personal observation of the witnesses, we are unable to say that the district court erred in discounting Richardson's testimony and in finding that his extrajudicial statements were voluntary.
 
 
 11
 Affirmed.
 
 
 
 [1]
 The state conviction was affirmed in People v. Richardson, 136 Cal.App.2d 342, 288 P.2d 521 (1955). This is petitioner's second federal habeas proceeding
 
 
 [2]
 The post-Culombe Supreme Court decisions relied upon by Richardson in advancing this argument are: Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)
 
 
 [3]
 The Judges' Rules, as explained in Culombe, 367 U.S. at 594-597, 81 S.Ct. 1860, embody the attitude of the English Bench concerning police interrogation and, among other things, require that, before questioning the individual to be charged with a crime, the police caution him that he need say nothing and that what he says may be used against him
 
 
 [4]
 At Richardson's state trial, the state used Richardson's exculpatory statements for impeachment purposes, and his incriminating statements as affirmative evidence of guilt
 
 
 [5]
 (1) Lack of aid of counsel, especially where requested by the suspect; (2) failure meaningfully to advise of the right to remain silent; (3) unreasonable delay in arraignment; (4) sustained incommunicado interrogation; (5) police pre-commitment to the suspect's guilt; (6) threats of force, lynching or other intimidating circumstances; (7) substandard conditions of confinement; (8) disruption of morale by movement from jail to jail; (9) insufficiency of food and rest; (10) relative lack of mental capacity; (11) physical or mental disability