321 So.2d 763 (1975)
STATE of Louisiana
v.
Johnson WASHINGTON, Jr.
No. 55806.
Supreme Court of Louisiana.
October 1, 1975.
*764 Jacques F. Bezou, New Orleans, Garon, Brener & McNeely for defendant-appellant; David E. Kendall, NAACP Legal Defense and Educational Fund, Inc., New York City, of counsel.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Melvin P. Barre, Dist. Atty., Walter L. Smith, Jr., Asst. Atty. Gen., Norman J. Pitre, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Grand Jury of St. Charles Parish indicted Johnson Washington, Jr. for the first degree murder of James Allen Arterbury, a deputy sheriff of St. Charles Parish, in violation of LSA-R.S. 14:30. Washington, represented by retained counsel, was arraigned and pleaded not guilty and not guilty by reason of insanity. He was granted sixty days to file preliminary pleadings.
Upon a defense motion, the court appointed a lunacy commission to examine the defendant. After a hearing, the court found him competent to stand trial.
On January 31, 1974, the jury returned a verdict of guilty as charged. Later, the trial judge imposed the mandatory death sentence. The defendant appeals, relying on three assignments of error.
The background facts are as follows: Deputy James Allen Arterbury of the St. Charles Parish Sheriff's Office answered a disturbance call at the Nite Cap Lounge in Killona, Louisiana about 8:30 p.m., on July 4, 1973. Because the crowd became unruly, the deputy returned to his car, called for assistance, and took his shotgun from the trunk.
Deputy Arterbury walked toward the crowd, keeping the muzzle of the shotgun pointed skyward at all times. The crowd became more belligerent and surrounded the deputy sheriff. Someone grabbed the deputy's shotgun and it discharged harmlessly into the air. Washington then took the revolver out of the officer's holster and shot him in the back. The crowd scattered, leaving the fallen officer mortally wounded.
ASSIGNMENT OF ERROR NO. 1
Prior to trial, defense counsel filed a motion to quash the indictment alleging the unconstitutionality of LRS-R.S. 14:30, the first degree murder statute. The defendant asserts that the mandatory death penalty constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and is a denial of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.
LSA-R.S. 14:30 reads as follows:
"First degree murder is the killing of a human being:
* * * * * *
"(2) When the offender has a specific intent to kill, or to inflict great bodily harm upon, a fireman or a peace officer who was engaged in the performance of his lawful duties;
* * * * * *
"For the purposes of paragraph (2) herein, the term peace officer shall be *765 defined and include any constable, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, district attorney, assistant district attorney or district attorneys' investigator.
"Whoever commits the crime of first degree murder shall be punished by death."
The defendant relies upon Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972). However, in light of that decision, we have heretofore upheld the constitutionality of the capital punishment provisions of the murder statute. See State v. Hill, La., 297 So.2d 660 (1974); State v. Selman, La., 300 So.2d 467 (1974).
In State v. Hill, supra, where the defendant had been convicted under paragraph (4) of LSA-R.S. 14:30, we held:
"The death penalty for murder, when the perpetrator has the intent to kill or inflict great bodily harm on more than one person, is neither barbarous nor disproportionate to the offense. See State v. Selman, supra; State v. Crook, 253 La. 961, 221 So.2d 473 (1969); 21 Am. Jur.2d, Criminal Law, § 613, p. 563. In fact, the Due Process Clause of the United States Constitution sanctions the death penalty when it is imposed with due process of law.
"We conclude, therefore, that capital punishment Per se is not constitutionally proscribed."
In Hill, we also rejected defense counsel's equal protection argument, stating:
"As provided in the statute, the death penalty is mandatory for first degree murder. Article 817 of the Louisiana Code of Criminal Procedure, as amended by Act 125 of 1973, prohibits a qualification of the guilty verdict. If the defendant is found guilty as charged, the trial judge must impose the death penalty. The penalty cannot be applied in a discriminatory manner. See Furman v. Georgia, supra; State v. Holmes, 263 La. 685, 269 So.2d 207 (1972). It is true that Article 814, as amended by Act 126 of 1973, lists as responsive verdicts second degree murder, carrying a sentence of life imprisonment, and manslaughter, carrying a sentence of imprisonment up to 21 years. See LSA-R.S. 14:30.1; LSA-R.S. 14:31. The use of these lesser verdicts, however, is contingent upon the jury finding insufficient evidence to convict the defendant of first degree murder, with which he is charged. The jury is concerned only with guilt. It has no sentencing function. LSA-La.Const. Art. 19, Sec. 9 (1921); LSA-C.Cr.P. Art. 802."
Our prior decisions are controlling. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
During the examination of prospective jurors, the trial court excused fourteen jurors for cause. In so doing, the trial judge relied on Paragraph (2) of Article 798 of the Louisiana Code of Criminal Procedure, which provides that it is good cause for challenge by the State that:
"The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; . . .."
The defense argues, however, that the fourteen jurors were improperly excused in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 *766 (1968). In that case, the United States Supreme Court held:
". . . [A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."
At the time Witherspoon v. Illinois was decided by the United States Supreme Court, a Louisiana jury in a capital case could return a verdict of "guilty without capital punishment." The mandatory sentence for such a verdict was life imprisonment rather than death. LSA-C.Cr.P. Art. 817. After Furman v. Georgia was decided, our legislature restructured its capital punishment provisions to comply with that decision. The death sentence was authorized for a restricted number of crimes, but it was made mandatory, thus eliminating the discretion formerly exercised by the trial jury. See, e.g., LSA-R.S. 14:30; LSA-C.Cr.P. Art. 817, as amended by Act 502 of 1972 and Act 125 of 1973. Thus, in Louisiana, the trial jury now has no role in sentencing.
We can reasonably conclude that under the revised procedure, the sentence is not "imposed or recommended" by the jury. Hence, the holding in Witherspoon, designed to avoid a "hanging jury," would not be strictly applicable.
In the present case, however, we note that the prospective jurors were informed during voir dire examination that the sentence for first degree murder was death. They were then questioned concerning their attitude toward capital punishment. In the light of the record, therefore, we assume that the holding of Witherspoon v. Illinois applies.
The Witherspoon holding is narrow. The Court stated:
"The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. For the State of Illinois did not stop there, but authorized the prosecution to exclude as well all who said that they were opposed to capital punishment and all who indicated that they had conscientious scruples against inflicting it."
Thus, it is clear that the holding only bans the exclusion of jurors who voiced general objections to capital punishment or expressed conscientious or religious scruples against its infliction. It does not ban the exclusion of jurors who state they will not vote for a verdict that carries capital punishment. See State v. Brown, La., 302 So.2d 290 (1974); State v. Cripps, 259 La. 403, 250 So.2d 382 (1971); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970).
We have examined the record in the present case. Each of the excused jurors was questioned at length by the State and, in most instances, by the trial judge. The prospective juror was excused for cause only when the testimony made clear that under no circumstances could he return a verdict of guilty of first degree murder or that his fixed opinions prevented an impartial determination of guilt based upon the evidence.
We conclude that this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
This assignment relates to the trial court's refusal to grant the defense motion *767 to suppress a confession made by the defendant. The defense argues that, prior to making the confession, the defendant was not effectively apprised of his rights as enunciated in Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the confession was given "under grave duress, coercion and fear."
The three officers present at the arrest, Coleman, St. Pierre, and Kimble, testified that, on his arrest, the defendant was orally advised of his Miranda rights (Tr. 14, 73, 99). Both the defendant and his father indicated that they understood these rights.
Officers Loque and Coleman, who were at the jail during much of the morning of July 5, 1973, testified that they were able to view the defendant in his cell frequently and saw no evidence of intimidation or physical abuse. Officers St. Pierre and Kimble testified to the same effect. Officer Gary Zeringue, who photographed the defendant at about 8:00 a.m., on July 5, 1973, described the defendant as looking "normal." Dr. Wilson Couch, who treated the defendant on August 1, 1973, saw no signs of physical abuse.
Between 8:20 and 9:00 a.m., the defendant signed a statement acknowledging that he had been advised of his Miranda rights. During that time interval, he also signed a confession, which contains a recital that it was given voluntarily and without any threats or promises.
The defense contends, however, that because of defendant's low intelligence and inadequate education, he did not knowingly waive his rights and had no adequate understanding of what he was signing.
The record reflects that the defendant had an education described by his mother as "sixth or seventh grade." Defendant, himself, described his education as being "to the fourth grade." He attended the Leesville School for the retarded for about two years. There can be no doubt that he was of low intelligence. Low intelligence alone, however, does not vitiate the waiver and confession. See State v. Edwards, 257 La. 707, 243 So.2d 806 (1971); State v. Chinn, 229 La. 984, 87 So.2d 315 (1955). The question must always be whether the State has borne its burden of proving that the defendant was advised of his rights, that he voluntarily elected to make a statement, and that his confession was otherwise free and voluntary.
Officer St. Pierre, who witnessed the signing of both documents, testified that he first serially questioned the defendant as to whether he understood the rights waived, a standard method for obtaining an effective waiver from a person of subnormal intelligence. The defendant answered each question affirmatively and then signed the "Voluntary Statement" form. Officer St. Pierre testified that he then transcribed the defendant's confession as the defendant related it to him.
The defendant was questioned at the hearing on the Motion to Suppress regarding his waiver and the confession. Although he denied being given the Miranda warnings, he testified in substantial accord with his written confession. He stated:
"Then I moved to the side of the deputy, pulled his gun out of the holster and shot him one time in the right back side." (Tr. 52).
In contending that the waiver executed here was ineffective, the defense also relies on the Miranda principles set forth in Westover v. United States, 384 U.S. 436, 494, 86 S.Ct. 1602, 1638, 16 L.Ed.2d 694, 735 (1966).[1] Westover had been arrested *768 at 9:45 p.m., not given any Miranda-type warnings, and was interrogated throughout the night and following morning by the local police. He was turned over to FBI agents at noon and confessed two and one-half hours later. The Supreme Court found "[no] evidence of an articulated waiver of rights after the FBI commenced its interrogation." In the instant case, however, the Miranda warnings were given to Washington upon his arrest and prior to his confession. The defendant waived individually each right, both orally and in writing.
Westover, therefore, is factually distinguishable.
In connection with this assignment, the defense also argues that the defendant's written confession was the product of an earlier inadmissible oral confession. The record does reveal that the defendant was questioned during the early morning hours of July 5, 1973. Although the record is not altogether clear, we assume arguendo that the defendant made an earlier inculpatory statement to Deputy Coleman.
The State did not introduce the earlier statement at trial. Since Miranda warnings were properly given upon defendant's arrest, we find no basis in the record for holding that the earlier statement was inadmissible. Moreover, considering the "totality of the circumstances," we hold that the defendant's later confession was sufficiently insulated from the earlier statement. See Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968).
The record reflects that the defendant's confession, which was admitted in evidence, was given sometime later in the morning to Officer St. Pierre, who had not seen the defendant since shortly after his arrest. Our earlier analysis assures us that the Miranda warnings given in conjunction with the taking of the written and oral confessions were adequate to enable the defendant to make an informed waiver. We conclude that the confessions were not infected by the assumed earlier statement.
Hence, the ruling of the trial judge was correct.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON and BARHAM, JJ., concur.
CALOGERO, J., concurs and assigns reasons.
TATE, J., concurs: As to Bill No. 2, see my concurring opinion in State v. Watts, 320 So.2d 146 (rendered this date).
CALOGERO, Justice (concurring).
I concur in the affirmance of this defendant's conviction and sentence, but I disagree with the majority's handling of Assignment of Error No. 2. While the trial court did indeed excuse fourteen jurors for cause, allegedly because they indicated that they could not vote for the imposition of capital punishment despite the evidence of guilt presented by the state, the record reveals that defense counsel acquiesced in those rulings by the trial court. No objection, based upon either Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), or upon Article 798(2) of the Code of Criminal Procedure, was made by defense counsel at the time the jurors were excused. Accordingly, defendant cannot avail himself of this alleged error on appeal. Art. 841, C.Cr.P. See State v. Watts, La., 320 So.2d 146, decision rendered this date.
NOTES
[1] Carl Calvin Westover v. United States was consolidated for treatment with Ernesto A. Miranda v. State of Arizona, Michael Vignera v. State of New York, and State of California v. Roy Allen Stewart. Westover is commonly cited Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, it is separately cited here because of the particular factual circumstances of Westover's arrest.