THE STATE OF OHIO, APPELLEE, *v.* ROYSTER, APPELLANT.

(No. 75-975—Decided December 27, 1976.)

Mr. *George C. Smith*, prosecuting attorney, and *Mr. Alan C. Travis*, for appellee.

Mr. *Myron Shwartz* and *Mr. Timothy D. Gerrity*, for appellant.

CELEBREZZE, J. Appellant's threshhold argument concerns itself with the constitutional validity of the Ohio statutes which culminate with the application of the death penalty in certain aggravated murders, particularly the one at issue here. He contends that the case of *Furman v. Georgia* (1972), 408 U. S. 238, held that the death penalty could not be imposed under a statutory scheme which permits arbitrary, rare and discriminatory application. Appellant contends that the trial court committed error by refusing to strike the specifications of aggravation in the first instance, and, after the conviction and mitigation hearing, to limit its sentence to life imprisonment. He further singles out the language of Justice Brennan, at page 291, in the *Furman per curiam* opinion, that capital punishment is "uniquely degrading to human dignity" and is therefore violative of the Eighth Amendment to the United States Constitution. Appellee notes that only one other justice concurred in this view which hardly makes it binding on state courts.

Subsequent to the decision in *Furman*, the Ohio General Assembly enacted R. C. 2903.01, 2929.02, 2929.03, 2929.04 and 2941.14, which provide for a death penalty under certain circumstances, but are specifically designed to remove the uncontrolled or arbitrary sentencing discretion rejected in *Furman*. We deem it sufficient to state herein that the death penalty imposed under the Ohio controlled statutory mandates is not violative of the Eight Amendment nor does it fall within the unfettered sentencing dis-

cretion barely condemned in *Furman*. (See *State* v. *Bayless* [1976], 48 Ohio St. 2d 73.)

Appellant argues that the language set forth in R. C. 2929.04(B) provides for merely another formula by which the sentencing may arbitrarily impose the unwarranted death penalty.

R. C. 2929.04, as pertinent, reads as follows:

"(B) Regardless of whether one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment and proved beyond a reasonable doubt, the death penalty for aggravated murder is precluded when, considering the nature and circumstances of the offense and the history, character, and condition of the offender, one or more of the following is established by a prepondence [preponderance] of the evidence:

"(1) The victim of the offense induced or facilitated it.

"(2) It is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation.

"(3) The offense was primarily the product of the offender's psychosis or mental deficiency, though such condition is insufficient to establish the defense of insanity."

It is important to note that the above statute explicitly states that the death penalty is "precluded when" the presence of any one of the conditions cited in paragraphs (1), (2) and (3) is found by a preponderance of the evidence at a separate hearing specifically held for that purpose. The validity of this section has also been passed on in *State* v. *Bayless, supra.*

The record does not disclose that paragraph (1) was involved herein. Appellant, however, did attempt to exploit the conditions set forth in paragraphs (2) and (3). At this time we would only observe that a thorough review of the trial record and mitigation hearing fails to establish that appellant was under "duress, coercion, or strong provocation." To the contrary, while Maurice and Smith protested the decision to kill Mrs. Nichols, and indeed were

not present at her execution, appellant *was* present, *did* provide the death weapon by personally taking it from his father's home, and *aided* the triggerman, Harris, in attempting to conceal the body. Appellant's fingerprint was clearly identified as being present on the weapon.

Nor could any amount of cross-examination shake the conclusions of the psychiatrists, Dr. Leuchter and Dr. Stevenson, that the appellant was not mentally deficient.

Appellant contends next that his right to contact counsel, under R. C. 2935.14 and 2935.20, was not afforded by the police.

The pertinent part of R. C. 2935.14 is as follows:

"If the person arrested is unable to offer sufficient bail or, if the offense charged be a felony, he shall, prior to being confined or removed from the county of arrest, as the case may be, be speedily permitted facilities to communicate with an attorney at law of his own choice, or to communicate with at least one relative or other person for the purpose of obtaining counsel * * *."

R. C. 2935.20 states, in part:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. * * * No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section."

The record sufficiently repudiates this contention. The appellant was arrested and taken to the police administration building in Philadelphia at approximately 12:00 a. m., on May 14, 1974. Detective Michael Gannon of the Philadelphia Police Department testified that at about 1:30 a. m., the same day, he saw appellant in the interrogation room

and told him that the telephones were available for his use. Detective Gannon also testified that he first advised appellant of his rights and that he was advised of these same rights later. The record does not disclose whether anyone offered to make a telephone call for the appellant. His counsel argues that *State* v. *Jones* (1974), 37 Ohio St. 2d 21, applies to this case. In that case, the detective who interviewed the accused therein could not remember if he had offered the use of a telephone. That is not the situation here.

Having scrutinized the record, we are satisfied that appellant was offered the use of the telephones. Although not disputing counsel's contention that he had previously advised appellant to call when he was arrested, we conclude that for whatever reason, appellant chose not to avail himself of this advice.

Counsel argues next that appellant's confession was improperly obtained for the following five reasons:

First, that the Philadelphia police did not comply with counsel's request that counsel be notified prior to any questioning of appellant. The record discloses that it was stipulated that if counsel were to testify, then he would say that he had telephoned the Supervisor of the Homicide Division of the Philadelphia Police Department, name unknown, and requested that he be called when appellant was arrested. However, there is no evidence that any of the the police officers involved herein were aware of any contact between defense counsel and person(s) unknown at the Philadelphia Police Department. Appellant attempts to draw a parallel between this case and *Darwin* v. *Connecticut* (1968), 391 U. S. 346. A review of that decision shows that it is obtuse to the facts herein.

Second, that the confession was obtained by actual physical force. The appellant testified, on *voir dire*, that he was taken to a Philadelphia police station where he was beaten while his hands were handcuffed to a bar between his legs. He said he was told he could not call his attorney until he signed "these statements" and/or "these

papers." He refused and was hit again. He says he then signed the papers.

The record reveals that appellant's aunt, Hattie Thompson, and his cousin, Hezekiah Thompson, witnessed the arrest. They agreed there was no "pushing or shoving" and "no one had no beating at all." Detective Martin Buck of the Philadelphia Police Department, the arresting officer, testified that there were no threats, beatings or other abuse. Detective Buck saw appellant again at 1:30 a. m., on May 14th, and saw no evidence of any mistreatment, nor did appellant complain of any. Detective Gannon testified he advised appellant of his rights and of the availability of telephones and stated he saw no evidence of mistreatment and that the appellant complained of none. Detective Tom Jones of the Columbus Police Department testified that he saw appellant at 3:15 a. m., later that day, and remained with him for almost an hour questioning him, and that he observed no evidence of any beating nor did he in any way threaten or harass the appellant.

The following day, May 15, 1974, appellant appeared before a municipal judge in Philadelphia for an extradition hearing. He had no cuts or bruises, nor did he complain to the court of any mistreatment.

Third, counsel argues, appellant was not clearly advised of his right to use the telephone. We have previously discussed this contention and would only reiterate our conclusion.

Fourth, appellant contends he was not sufficiently warned of his right to counsel resulting in an inability on his part to understand the consequences of his waiver. The record discloses, however, that Detective Gannon warned him of his rights, as did Detective Jones, on at least two occasions and that he gave the waiver form to appellant to read before he signed it. Prior to appellant's signing, he was asked by Detective Jones if he understood and could read and write and he said he did and signed.

Fifth, and last, the appellant claims he did not possess

the mental acuity and capacity to make the decision to waive his rights. Counsel maintains that because of appellant's low level of educational achievement and reading comprehension he could not knowingly and intelligently waive his rights. A reading of the record discloses the contrary conclusion. The testimony of the appellant reveals an ability to understand and to respond fluidly to questioning. It is not marked by any stumbling or stammering or inability to comprehend. It is further difficult to understand the motive of his counsel in advising him on the telephone prior to his arrest to some extent of his rights if counsel, who knew appellant prior to this incident, did not have confidence in appellant's comprehension.

While the explanation of rights and their waiver must be weighed with the individual's intellectual capacity, the totality of the evidence in this case supports the trial court's judgment that the statement was properly admitted. The record discloses an uncomplicated explanation of rights in language appellant acknowledged he understood.

Appellant urges next that the testimony at the mitigation hearing pursuant to R. C. 2929.04(B), concerning duress, coupled with his low I. Q., should preclude the death penalty. He urges this court to review the record pertaining to duress in order to determine if the test of "preponderance of the evidence" had been met. He then argues that once the element of duress has been presented, "the burden should be on the state to prove beyond a reasonable doubt that duress did not exist." This conclusion is not within this court's reading of the statute which clearly speaks only of establishing by a "preponderance of the evidence" any one of the three mitigating circumstances. R. C. 2929.04(B), supra.

The record at the mitigation hearing shows the appellant had an I. Q. of 75 in 1962; 61 in 1966; and 54 in 1968. However, the testimony of the psychiatrists did not equate I. Q. with mental deficiency. Dr. Henry Leuchter, rather, related the decrease in appellant's scores to developing characteristic traits and his unwillingness to cooperate with

the examiner. The doctor was most positive in his conclusion that the appellant was not mentally deficient. This coincides with the testimony of Dr. Robert B. Stevenson. We can find no evidence that the offense was the product of a "psychosis or mental deficiency."

Finally, appellant argues that the trial court erred in denying his request for additional experts at state expense.

R. C. 2929.03 provides, in pertinent part:

"(D) When death may be imposed as a penalty for aggravated murder, the court shall require a pre-sentence investigation and a psychiatric examination to be made, and reports submitted to the court, pursuant to Section 2947.06 of the Revised Code. Copies of the reports shall be furnished to the prosecutor and to the offender or his counsel. The court shall hear testimony and other evidence, the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, relevant to the penalty which should be imposed on the offender. If the offender chooses to make a statement, he is subject to cross-examination only if he consents to make such statement under oath or affirmation."

Pursuant to the above, and in compliance with R. C. 2947.06 contained therein, the trial court appointed two psychiatrists to examine appellant, report their findings and appear to testify at a mitigation hearing. They were witnesses of the court, not the state or the appellant, and received a fee fixed by court order.

R. C. 2947.06 limits the authority of the court to "not more than two" in making the appointment of either psychologists or psychiatrists. The appellant makes no complaint of incompetency, bias or prejudice on the part of the two appointees. His complaint is only that he wished to have his expenses for those he privately employed.

It should be noted that the state offered to stipulate any findings that appellant had to offer along these lines and the court did, in fact, receive reports from two of the appellant's experts.

Appellant contends next that due to his economic condition he was denied equal protection of the law. It is obvious from a reading of the statute that this contention is misplaced. The General Assembly, in limiting to two the number of psychologists or psychiatrists the court might appoint, also limited the expert testimony of this nature the court might consider. The statute provides, in effect, that all, including appellant, are entitled to only two witnesses of this category. We are unable to agree that the trial court either abused its discretion or denied any right, including that of equal protection, to the appellant.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.