No. 80–763. ESTELLE, CORRECTIONS DIRECTOR *v.* JUREK. C. A. 5th Cir. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari denied.

JUSTICE REHNQUIST, dissenting.

In light of the facts of this case and the legal issues it presents, it is inexplicable to me why this Court fails to grant the petition for certiorari and give the case plenary consideration. Against the backdrop of a death sentence, this case involves the voluntariness of a series of confessions, the proper standard of review of state and federal lower court determinations of "voluntariness" in a habeas corpus proceeding, and the applicability of the harmless-error doctrine. To be sure, the issues presented are difficult. But that is

surely no reason for this Court to avoid its responsibility of resolving a case as important to the integrity of our judicial system as this.

Jurek is no stranger to this Court. In early 1974, Jurek was convicted by a jury of the murder of a 10-year-old girl and sentenced to death. The Texas Court of Criminal Appeals affirmed, rejecting Jurek's contention that his oral and two written confessions were involuntary and should not have been admitted into evidence. *Jurek* v. *State,* 522 S. W. 2d 934 (1975). We granted certiorari to decide only whether Texas' death penalty statute was constitutional and affirmed, finding that the statute satisfied the principles announced in *Furman* v. *Georgia,* 408 U. S. 238 (1972). *Jurek* v. *Texas,* 428 U. S. 262 (1976). Jurek then unsuccessfully sought a writ of habeas corpus in the state courts. We denied his petition for a writ of certiorari, after granting a temporary stay of execution pending timely filing for that writ. *Jurek* v. *Estelle,* 430 U. S. 951 (1977).

But, as in so many criminal cases these days, Jurek's conviction was still not final. He next commenced habeas corpus proceedings in the *federal* courts, again challenging the voluntariness of his confessions. The District Court held an exhaustive evidentiary hearing and—like the jury, the state trial court and the state appellate court before it—found the confessions to be voluntary. A panel of the Court of Appeals for the Fifth Circuit nevertheless reversed, concluding that the confessions were involuntary. The 25 judges of the Court of Appeals sitting en banc also reversed, albeit on somewhat different grounds. 623 F. 2d 929 (1980). Judge Garza's opinion, embraced in its entirety by only three other judges, represents the result reached by a majority of the court. The majority found that although the oral confession and the first written confession were voluntary, the second written confession was involuntary. Judge Godbold, joined by one other judge, would have found both written confessions involuntary. Judge Frank M. Johnson, joined by six judges,

1016

would have held all of the confessions involuntary. Judges Brown and Reavely filed separate opinions, joined by 10 and 8 judges respectively, which would have held all of the confessions voluntary.

Briefly stated, these are the facts surrounding the confessions. Jurek was arrested late at night in Cuero, Tex., in connection with the disappearance of Wendy Adams. He was taken to police headquarters, given *Miranda* warnings and questioned for 45 minutes. He was not questioned again until 9 o'clock the next morning. He asked to take a polygraph test and was driven to Austin, Tex., for that purpose.* When confronted with the results of the test, he orally admitted killing Wendy and told the police where the body might be found. The police then returned Jurek to Cuero and immediately took him before a Magistrate where Jurek declined a request for counsel. After searching unsuccessfully for the body, the police again questioned Jurek and late that night took a written confession from Jurek, witnessed by two members of the community, in which he stated he killed Wendy because she made disparaging remarks about his family. For security reasons, the police then transferred Jurek for the night to a jail in Victoria, Tex., about 50 miles away. The next day the police found Wendy's body and that afternoon again questioned Jurek. In a second written confession, again witnessed by two other members of the community, Jurek stated that he killed

---

*To be sure, there is some dispute as to the facts. The panel found that Jurek was questioned throughout the first night and criticized the police for taking Jurek to Austin, Tex. 593 F. 2d 672 (1979). The Texas Court of Criminal Appeals and the United States District Court, however, found that Jurek was left alone during the night and that Jurek was transferred to Austin at his own request. Thus, the panel clearly ignored the requirement of 28 U. S. C. § 2254 (d) that state-court findings of fact are to be presumed correct. See *Sumner* v. *Mata*, 449 U. S. 539 (1981). To the extent Judge Garza's opinion relied on the panel's findings of facts, it too erred.

Wendy because she refused to have sexual relations with him.

There are several reasons why this case is worthy of review. In the first place, Judge Garza's attempt to distinguish between the first and second written confessions is, to me, wholly unpersuasive. Indeed, other than Judge Garza and the three judges who joined him, no one had ever suggested that the second confession was less voluntary than the first. In cases involving multiple confessions, we have held that some of the confessions may be found involuntary and others not only if such a distinction is justified by a sufficiently isolating "break in the stream of events." *Darwin* v. *Connecticut,* 391 U. S. 346, 349 (1968). There is no such break here.

Judge Garza attempted to distinguish the second confession on the ground that the police were motivated by a desire to secure a death sentence for Jurek. But, as even Judge Johnson recognized in his separate opinion, the record reveals that the prosecutors believed they already had enough evidence to obtain a death verdict. 623 F. 2d, at 943. The record shows that the prosecutors sought the second confession simply because they wanted a signed statement of the "true" events. Each time the police learned of something new relating to Wendy's disappearance, they went to Jurek to confirm it. Surely nothing in the Constitution prevents the police from asking questions to discern the facts and solve a crime. Judge Garza also relied heavily on the alleged difference in "style" between the two confessions, that Jurek had less input in the second confession because it contained some "legalese." But even if there is a significant difference in style between the confessions—which I doubt—that may well be explained simply by the fact that the confessions were "transcribed" by two different persons. And all of the witnesses to the second confession have testified that they believed the confession to be voluntary. The opinion also relies on the fact that there was a 16-hour time

difference between the two confessions, but such reliance is misplaced in light of our decisions holding that even a 6-month time difference is not enough to constitute a sufficiently isolating break between two confessions. *United States* v. *Bayer,* 331 U. S. 532 (1947). Finally, Judge Garza criticized the police for not informing Jurek that if he admitted to attempting to have sexual relations with Wendy, he "was in effect" signing his "death warrant." 623 F. 2d, at 935. But even if it were true that the police were seeking the death sentence, our cases have never required the police to give such unsolicited legal advice. In short, nothing in the record reveals any police misconduct or any "coercion" visited upon Jurek. Quite the contrary, their performance strikes me as commendable. The evidence simply does not establish that Jurek's will was overborne or that his confession was not the product of a rational intellect and a free will.

If the issue in this case was only whether Jurek's confessions were voluntary, I might acquiesce in the denial of certiorari because of the impracticality of this Court's reviewing such fact-specific questions. But this case involves far more than simply whether a particular confession is voluntary. The decision below reveals tremendous confusion as to the proper standard of review in a federal habeas proceeding after a jury, a state trial court, a state appellate court, and a federal district court have determined a confession to be voluntary. Relying on *Beckwith* v. *United States,* 425 U. S. 341, 348 (1976), Judge Garza held that a court of appeals in a federal habeas case must " 'examine the entire record and make an independent determination of the ultimate issue of voluntariness.' " 623 F. 2d, at 931. Judge Brown, on the other hand, found that Jurek's confessions were admissible under even the "independent review" standard, and thus found it unnecessary to choose between that standard and the "clearly erroneous" test. *Id.,* at 962. This issue is important and should be resolved by the Court. As Judge Brown recognized, we have never explicitly applied the "in-

dependent review" test in the federal habeas corpus context, and even in those cases where we have suggested that a broader standard of review might be appropriate we have made clear that "great weight, of course, is to be accorded to the inferences which are drawn by the state courts. In a dubious case, it is appropriate, with due regard to federal-state relations, that the state court's determination should control." *Culombe* v. *Connecticut,* 367 U. S. 568, 605 (1961). In this case, the Court of Appeals gave little deference to findings of historical facts, see n.*, *supra,* much less to the lower court's inferences as to the ultimate issue of voluntariness.

In my view, the Court of Appeals also erred in ignoring the applicability of the harmless-error doctrine to the facts of this case. In *Milton* v. *Wainwright,* 407 U. S. 371 (1972), we clearly held that the harmless-error doctrine should be applied in cases involving multiple confessions. We explained:

> "The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo* but, rather, to review for violation of federal constitutional standards. In that process we do not close our eyes to the reality of overwhelming evidence of guilt fairly established in the state court 14 years ago by use of evidence not challenged here; the use of the additional evidence challenged in this proceeding and arguably open to challenge was, beyond reasonable doubt, harmless." *Id.,* at 377-378.

What is particularly troubling about this case is that I have no doubt that the decision below was colored by the fact that this is a capital punishment case. The severity of a defendant's punishment, however, simply has no bearing on whether a particular confession is voluntary or on the extent to which federal habeas courts should defer to state-court findings. Following the decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972), holding invalid a state capital punish-

ment statute, the State of Texas, like 34 other States, enacted new death penalty statutes. Those States determined that capital punishment, though an extreme form of punishment, is a suitable sanction for the most extreme of crimes. One of the principal goals of our Federal Government, set forth in the preamble to the Constitution, is "[to] insure domestic Tranquility." Whether as means of deterring future crimes or as means of retribution, these States believed that a carefully designed and limited system of capital punishment would be one way of ensuring domestic tranquility.

In a series of decisions handed down in 1976 this Court upheld the constitutionality of those statutes, *Gregg* v. *Georgia,* 428 U. S. 153; *Proffitt* v. *Florida,* 428 U. S. 242, including the statute at issue here. *Jurek* v. *Texas,* 428 U. S. 262. The opinion announcing the judgment in *Gregg* v. *Georgia* reasoned that "[c]onsiderations of federalism, as well as respect for the ability of a legislature to evaluate, in terms of its particular State, the moral consensus concerning the death penalty and its social utility as a sanction, require us to conclude, in the absence of more convincing evidence, that the infliction of death as a punishment for murder is not without justification and thus is not unconstitutionally severe." 428 U. S., at 186–187 (opinion of STEWART, POWELL, and STEVENS, JJ.). The opinion also squarely rejected the notion that "standards of decency" rendered the death penalty unconstitutional, noting that "it is now evident that a large proportion of American society continues to regard it as an appropriate and necessary criminal sanction." *Id.,* at 179.

The murder in this case was committed in 1973. For eight years, the State of Texas has repeatedly presented its case against Jurek to state and federal courts. Yet, despite the fact that every court has concluded that at least one of Jurek's written confessions was voluntary, the people of the State of Texas now find themselves no closer to enforcing

their capital punishment statute than they were when they began eight years ago. By overturning Jurek's conviction on the basis of a procedural nicety, the decision below not only renders Texas' death penalty statute an ineffective deterrent, it also frustrates society's compelling interest in having its constitutionally valid laws swiftly and surely carried out. A potential murderer will know that even if he is convicted and sentenced to death, he will very likely not be put to death. If he litigates the case long enough, the odds favor his finding some court which will accept a legal theory previously rejected by other courts.

As Judge Brown put it:

> "This case presents in dramatic terms the tensions between promoting thorough and efficient enforcement of the laws and ensuring that the rights of the accused are scrupulously guarded. We have on the one hand a murder which could hardly have been more reprehensible; the violent, senseless slaying of a young girl. On the other hand, we have a decision by a panel of this Court throwing out Jurek's two written confessions on the grounds of voluntariness, making it very unlikely that Jurek could again be convicted on retrial." 623 F. 2d, at 956.

I agree with Judge Brown that the decision below makes it "very unlikely that Jurek could again be convicted on retrial." Even though Jurek has made at least one "voluntary" confession, he may well escape all punishment for his violent, senseless slaying of a young girl. I, for one, am unwilling to subscribe to a decision of this Court which sanctions such an outcome. I do not think that this Court can, like Pontius Pilate, wash its hands of the numerous issues presented in this case, issues which are bound to arise not merely in this case, but in countless others. I would therefore grant the petition for certiorari and set the case for argument.