BAKER, Judge, with whom CRAWFORD, Judge,
joins (dissenting):
The question presented is whether the consent Appellant gave to Air Force Office of Special Investigations (AFOSI) agents to search his computer vitiated the taint of the initial unlawful search of the same computer.
The exclusionary rule is a “judicially prescribed remedial measure” that is not intended to apply in all instances where evidence is acquired following an illegal search. Segura v. United States, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The rule recognizes that while government agents should not profit from illegal searches, they should also not “ ‘be placed in a worse position than [they] would otherwise have occupied.’ ” United States v. Haynes, 301 F.3d 669, 681-82 (6th Cir.2002) (quoting Murray v. United States, 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)).
The rule should not apply in circumstances where the connection between a first unlawful search and the discovery of evidence in a second search is “ ‘so attenuated as to dissipate the taint’ ” of earlier government misconduct. Segura, 468 U.S. at 805, 104 S.Ct. 3380 (quoting Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939)). A second search is sufficiently attenuated from a prior unlawful search if the government can show “ ‘there was some significant intervening time, space, or event’ ” between the two searches. Haynes, 301 F.3d at 682 (quoting United States v. Buchanan, 904 F.2d 349, 356 (6th Cir.1990)) (citation omitted).
A suspect’s voluntary consent to a second search by law enforcement may be an attenuating event that removes the taint of a prior illegal search, so long as the consent is “sufficiently an act of free will to purge the primary taint of the unlawful invasion.” Brown v. Illinois, 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (citation and quotation marks omitted); see also United States v. Beason, 220 F.3d 964, 967 (8th Cir.2000) (consent to a search is a sufficient act of free will to purge the primary taint). In United States v. Khamsouk, this Court, borrowing from Brown, applied a three-factor analysis to determine whether an appellant’s consent to search his bags was an act of free will and sufficiently attenuated from a prior illegality. 57 M.J. 282, 291-94 (C.A.A.F.2002). These factors included: “ ‘the temporal proximity of the arrest and the confession, particularly, the presence of intervening circumstances, *341 and the purpose and flagrancy of the official misconduct.’ ” Id. at 291 (quoting Brown, 422 U.S. at 604, 95 S.Ct. 2254).
Applying the Brown factors to the specific circumstances of the initial search in this case, I conclude that the second search was sufficiently attenuated and Appellant’s consent vitiated the taint of the first unlawful search. Therefore, I respectfully dissent.

Temporal Proximity

The government bears the burden of demonstrating that an act of subsequent consent was voluntary and sufficiently a product of free will to purge the primary taint of the unlawful invasion. Khamsouk, 57 M.J. at 291. Courts look to a variety of factors in addressing this question, including the characteristics of the accused, whether the accused understands his or her right to refuse consent, the accused’s knowledge of the prior illegality, and the nature of the detention, if any. See United States v. Jones, 234 F.3d 234, 242-43 (5th Cir.2000); Haynes, 301 F.3d at 682-84. No factor is dispositive and each case must be addressed on its own merits and facts. Khamsouk, 57 M.J. at 290-91.
In this case, the record reflects that Appellant was not privy to the initial unlawful search, and that he was instead approached in the dining facility by two AFOSI agents about three hours later. Appellant was not in custody. The agents were aware of the prior search and the evidence identified during the search but they did not conduct the first search themselves. Significantly, the record does not reflect that Appellant was informed of the prior search and its result before he gave consent to a second search.
Thus, unlike the circumstances in United States v. Hernandez, 279 F.3d 302, 305 (5th Cir.2002), the request for consent by the AFOSI agents did not immediately follow the Fourth Amendment violation. Appellant did not know of the prior unlawful act, and thus did not face “the sense of futility” and psychological disadvantages that might arise if the individual concludes that the ‘“cat is already out of the bag[.]’ ” Commonwealth v. Pileeki, 62 Mass.App.Ct. 505, 818 N.E.2d 596 600 (2004) (quoting Darwin v. Connecticut, 391 U.S. 346, 351, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968) (Harlan, J., concurring in part and dissenting in part)).
Further, Appellant was advised that the purpose of the search was to look for child pornography, and thus, he was aware of the context of the consent request. In addition, he was advised of his right to withhold consent and he acknowledged his understanding of this right in writing. Based on these circumstances, I conclude this factor weighs heavily in favor of the Government. See United States v. McGill, 125 F.3d 642, 644 (8th Cir.1997) (consent an act of free will where suspect was informed and understood his right to withhold consent); see also United States v. Ramos, 42 F.3d 1160, 1164 (8th Cir.1994) (taint from initial unlawful search purged when suspect gave consent after given oral and written instruction that he did not have to provide consent).

Intervening Circumstances

I agree with the majority that there were no intervening circumstances between the unlawful search and Appellant’s subsequent consent to the second search.

Purpose and Flagrancy

The third “purpose and flagrancy” factor identified in Brown presents a closer question and is the key to this case. As this Court has recognized, the third Brown factor is particularly important because it comes closest to the exclusionary rule’s primary purpose: “ ‘the deterrence of police conduct that violates Fourth Amendment rights.’ ” Khamsouk, 57 M.J. at 291-92 (quoting Stone v. Powell, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)).
The exclusionary rule has “never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.” Stone, 428 U.S. at 486, 96 S.Ct. 3037. Rather, the Supreme Court has sought to strike a balance between society’s interest in the “ ‘determination of truth at trial’ ” and the “ ‘incremental contribution that might [be] made to the protection of Fourth Amendment values’ ” through application of the rule. Khamsouk 57 M.J. at 292 (quoting Stone, 428 U.S. at 488, 96 S.Ct. 3037). These values, of course, protect soci *342 ety as a whole and not just those brought before the bar of justice.
The Supreme Court has sought to find this proportionality by distinguishing between cases where police intentionally violate what they know to be a constitutional command, and evidence that is a product of good faith misunderstanding of the relevant constitutional requirements, as well as technical, trivial, or inadvertent violations. Brown, 422 U.S. at 610-12, 95 S.Ct. 2254 (Powell, J., joined by Rehnquist, J., concurring in part). As Justice White summarized:
[Djeserving of exclusionary treatment are searches and seizures perpetrated in intentional and flagrant disregard of Fourth Amendment principles. But the question of exclusion must be viewed through a different lens when a Fourth Amendment violation occurs because the police have reasonably erred in assessing the facts, mistakenly conducted a search authorized under a presumably valid statute, or relied in good faith upon a warrant not supported by probable cause.
Illinois v. Gates, 462 U.S. 213, 261 n. 14, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)(White, J., concurring in the judgment).
In short, the rule is best applied when its “ ‘remedial objectives are thought most efficaciously served.’” Khamsouk, 57 M.J. at 292 (quoting Penn. Board of Probation and Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (quoting Stone, 428 U.S. at 486, 96 S.Ct. 3037; United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974))).
In my view, the conduct of the dorm inspectors and AFOSI agents in this case falls somewhere between the exclusionary extremes; it represents neither flagrant conduct nor a merely technical or trivial violation of the Fourth Amendment. On the one hand, the dorm inspectors conducting the initial unlawful search, Technical Sergeant (TSgt) Schlegel, Staff Sergeant (SSgt) Roy, and SSgt Wilcox, were lawfully within the dorm room conducting a health and welfare inspection. The search was precipitated by their identification of adult pornography in plain view. Significantly, TSgt Schlegel previously sought legal advice from AFOSI in a similar incident, and he relied upon this advice before searching Appellant’s computer. The advice was erroneous, but neither TSgt Schlegel nor the AFOSI agents pursued a purposeful policy of violating rights with the intention of later obtaining cleansing consents. Rather, the unlawful search in this case was not part of a policy to circumvent servicemembers’ rights. Moreover, the search did not occur in the home, where the Fourth Amendment comes closest to black letter law, but rather in the context of a military barracks and an inspection search where case law reveals evolving principles of privacy and careful contextual applications of Fourth Amendment principle. See, e.g., United States v. Jackson, 48 M.J. 292, 293-94 (C.A.A.F.1998).
Based on these circumstances, I conclude that Appellant’s voluntary consent, given without knowledge of the prior search, vitiated the taint of the unlawful search, even if the AFOSI agents’ motive in requesting Appellant’s consent was supplied by the prior unlawful search. Further, applying the concepts of proportionality essential to justice embodied in the exclusionary rule, the legal policy purposes of the exclusionary rule would not otherwise be served through application of the rule in this case.