**Linwood Nathaniel RUFFIN, Appellant,**

v.

**UNITED STATES and District of Columbia, Appellees.**

**No. 6014.**

District of Columbia Court of Appeals.

Argued Dec. 21, 1971.

Decided June 23, 1972.

---

Mark J. Spooner, Washington, D. C., appointed by this court, for appellant.

Julius A. Johnson, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry, Margaret Lee Cross, and Richard L. Cys, Asst. U. S. Attys., were on the brief, for appellee United States.

C. Francis Murphy, Corp. Counsel, Richard W. Barton and E. Calvin Golumbic, Asst. Corp. Counsels, entered appearances for appellee District of Columbia and adopted brief of appellee United States.

Before KELLY, FICKLING and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

Appellant moved to suppress a gun seized from a car in which he was riding, and his oral and written statements admitting possession of the weapon. The motion was granted as to the oral statement but was denied for the gun and written statement. After a nonjury trial, appellant was convicted of carrying a pistol without a license,[1] failure to register it [2] and possessing ammunition.[3]

At the suppression hearing the sole witness on behalf of the Government was Metropolitan Police Officer William Goulart. He testified that on May 23, 1971, at approximately 2:15 a. m., he was on routine patrol in a police vehicle when he observed appellant accompanied by another male and two female companions walking along the 1300 block of T Street in northwest Washington. At that time Officer Goulart, according to his testimony, was able to see appellant carrying what appeared to be a pistol.

Because of this, he continued to watch appellant through the rear-view mirror of the vehicle as he pulled to the curb some distance in front of the car towards which appellant and his companions were walking. The four persons got into the car, appellant occupying the passenger side of the front seat. The officer testified that appellant then bent down in a manner suggestive of putting something beneath the seat. The car then moved forward and entered an alley between it and the police vehicle. The officer drove around the block and stopped the car as it emerged from the alley into S Street. Approximately two minutes elapsed between appellant's entry into the

---

1. D.C.Code 1967, § 22-3204.

2. D.C.Police Regs. art. 51, § 1.

3. *Id.* art. 53, § 2.

car and the stop. The officer approached the driver's side of the car. He testified that he followed this procedure to avoid alerting the occupants to his knowledge that appellant had a gun in the car. After checking the driver's license and registration, the officer asked him to step out of the car and frisked him. Subsequently, he went to the passenger side of the car and frisked appellant. After this frisk, the officer looked beneath the front seat on the passenger side—in the area where he testified he saw appellant leaning forward to place an object—and recovered a .22 caliber automatic pistol.

Without giving *Miranda* warnings, Officer Goulart asked appellant if it was his gun. The officer testified that appellant's initial response was affirmative but upon repetition of the question appellant denied that the gun belonged to him. In response to a question from defense counsel, the officer denied having suggested that all the occupants of the car could be arrested if no one would admit ownership of the gun.

Both appellant and the driver of the car were arrested and taken to the precinct station where appellant was given *Miranda* warnings. Subsequently, he signed a police prepared written statement admitting possession of the pistol. Approximately fifteen minutes passed between the oral confession at the scene and the signing of the written statement at the precinct.

Appellant's testimony at the hearing differed from Officer Goulart's in several respects. First, appellant testified that he was not carrying a pistol as he walked along the 1300 block of T Street. Instead, he stated, he merely had a candy bar and a pack of cigarettes. Second, according to appellant, Officer Goulart's contact with the driver annd himself extended beyond a mere pat-down in that the officer searched their shoes, belts, watchbands, and hair. Third, appellant testified that the officer told them that all the occupants of the car could be arrested unless someone admitted possession of the gun, and that he, appel-

lant, admitted such possession solely to protect the female occupants of the car who did not have arrest records and the driver against whom a charge of armed robbery was pending.

Appellant sought to suppress: (1) the oral confession made at the scene of the arrest, (2) the written statement signed at the precinct, and (3) the pistol seized from the automobile. The hearing judge granted the motion as to the oral statement finding that it "may have been made under duress" but denied the motion as to the subsequent written statement as "there was no duress continuing at the precinct." Finally, the hearing judge concluded that the officer had observed or thought he observed appellant carrying a gun and had not only a right but a duty to further investigate. Therefore, the motion to suppress the gun was denied.

■ Appellant raises several contentions upon appeal. Regarding the admissibility of the gun he argues that the actions taken by Officer Goulart at the scene, *viz.*, the extensive frisk of the driver and appellant and ignoring the supposedly armed passenger while talking to the driver, are so inconsistent with a belief that appellant was in possession of a gun that his testimony cannot reasonably be believed. Judgments as to the credibility of witnesses, however, rest primarily with the hearing judge and, as we cannot say the finding in this case that the officer saw or believed he saw a gun was without a reasonable foundation, we do not disturb the finding that the gun should not be suppressed.

■ Appellant also contends that the written statement should have been suppressed as it was tainted by the oral confession elicited only fifteen minutes prior to it. This taint, says appellant, has two independent bases. First, appellant argues that since the hearing judge suppressed the oral statement as having been made under duress from the officer, and thus was involuntary, the later repetition of that statement in writing was presumptively involun-

tary absent a showing that the improper influences ceased to have effect on the accused. Secondly, he contends that the oral statement resulted from custodial interrogation prior to *Miranda* warnings and consequently the subsequent repetition of his statement after *Miranda* warnings were given should have been suppressed since it was not established to be independent of the first.

Though the hearing judge's finding that the oral statement "may have been under duress" was not a flat finding of coercion, the fact remains the hearing judge suppressed this statement and so we must treat it as a finding of duress. While reasonable minds might differ as to whether the factual context of the oral statement amounted to duress we are unable to say the trial court's finding was clearly erroneous and so we accept it. This brings us to whether the later, written confession should have been suppressed since the preceding oral statement was made under duress. If so, it goes without saying it should not have been used at trial.

In denying the motion to suppress the written statement the hearing judge concluded that the duress existing at the scene ceased to exist fifteen minutes later at the precinct. In so ruling, the court stated that when he signed the written statement at the precinct, the girls had been released by the officer and the duress was gone.[4]

Perhaps the most lucid statement of the law on multiple confessions where duress is found on the initial confession appears in the opinion of the late Justice Harlan in *Darwin v. Connecticut*, 391 U.S. 346, 350–351, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968) (Harlan, J., concurring and dissenting).[5] There he stated:

A principal reason why a suspect might make a second or third confession is simply that, having already confessed once or twice, he might think he has little to lose by repetition. . . .

In consequence, when the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has, in my view, the burden of proving *not only* that the later confession was not itself the product of improper threats or promises or coercive conditions, *but also* that it was not directly produced by the existence of the earlier confession. [*Id.* at 350–351, 88 S.Ct. at 1490.] [Emphasis supplied.]

*See* Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Westover v. United States, 384 U.S. 436, 494, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Harney v. United States, 407 F.2d 586 (5th Cir. 1969).

In this case, the hearing judge found the duress had ceased at the precinct but failed to apply the second prong of the test and determine whether the written confession was produced by the "existence of the earlier confession" and was therefore "the product of the erroneous impression that the cat was already out of the bag." *Darwin v. Connecticut, supra,* 391 U.S. at 351, 88 S.Ct. at 1491. Consequently, we must remand to the hearing judge for further proceedings the previous motion to suppress in this case. In so doing we note that the written confession was not introduced during the Government's case-in-chief at the trial but, instead, was utilized during the defense case to impeach appellant's credibility.[6] The court, in this non-jury trial, later stated that it found the written confession, taken together with his

---

4. Apparently the hearing judge accepted appellant's testimony on the duress issue. He testified that he was trying to protect the girls and the driver as he was then under a robbery charge. While the girls had been released, the driver was taken in custody to the precinct with appellant.

5. His opinion was later quoted with approval by the Court in Harrison v. United States, 392 U.S. 219, 225 n. 12, 88 S. Ct. 2008, 20 L.Ed.2d 1047 (1968).

6. Since the written confession was used only for impeachment purposes any *Miranda* problem which might exist is not material. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

explanation concerning it, had the effect of demolishing his entire testimony.[7] Consequently, use of the document had a crucial effect at the trial.

In view of this disposition it is unnecessary to reach the remaining contentions.[8]

Upon remand, we anticipate there will be such further proceedings as are necessary for a determination of whether the written confession was produced directly by the existence of the earlier oral confession. If it is found to be so produced, the conviction should be set aside and a new trial ordered. If not, the conviction should stand.

Reversed and remanded for further proceedings consistent with this opinion.

---

7. The court said: "I treat his testimony as if it never were given." (Trial Tr. 30.)

8. We might say, however, that in the context of this case, the hearing judge should have permitted cross-examination of the arresting officer as to whether he followed standard police procedure after he first observed appellant. *Compare* Hill v. United States, 135 U.S.App.D.C. 233, 418 F.2d 449 (1968).