·Marcus E. BOYKINS, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 7982.

District of Columbia Court of Appeals.

Argued Feb. 18, 1975.

Decided Nov. 12, 1976.

---

**134**

Frank Petramalo, Jr., Washington, D.C., appointed by this court, for appellant.

Bette E. Uhrmacher, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter O. Mueller, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before GALLAGHER, YEAGLEY and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

After appellant Boykins had waived his right to trial by jury, he was tried by the court and convicted on two counts of armed robbery [1] and one count of assault with intent to rob while armed,[2] all in connection with the holdup of a liquor store in Washington, D.C.

Appellant's principal claim of error is that certain incriminatory oral statements which he made to agents of the Federal Bureau of Investigation in Norfolk, Virginia, should have been suppressed because they were made in the absence of, and as a result of interviews conducted without notice to, his court-appointed counsel. We affirm.

On February 22, 1973, appellant, who had been implicated by an accomplice, was arrested at his residence in the District of Columbia on the charges here at issue. After his arrest he was taken to the Metro-

politan Police Department and during interrogation en route and at the office of the robbery branch he admitted his participation in the liquor store robbery. This confession was later suppressed on the ground that the standards of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), had not been met.

On the day following the arrest, counsel was appointed and appellant then appeared for presentment accompanied by counsel and was released on his own recognizance.

After his release, he travelled to Norfolk, Virginia, and on March 5, 1973, agents of the FBI went to his mother's home to interview him in connection with his possible involvement in the shooting of a federal official which was unrelated to this liquor store robbery case. The agents encountered a scene of confusion because of a mattress fire on one of the upper floors, and when, in order to avoid the confusion, the agents asked appellant to accompany them to their office he agreed to do so voluntarily. He was not placed under arrest, and no arrest was then contemplated. Upon arrival at the agents' office, appellant, who had a tenth-grade education and was not a stranger to the criminal justice system,[3] read and signed an FBI form[4] which advised him of his *Miranda* rights and which indicated that he voluntarily waived those rights. Against this background, the trial court found that appellant was capable of understanding the significance of the form which he signed and that he had effectively waived his rights.

After the waiver, appellant made the particular incriminating statements here involved. The sequence of events was sum-

---

1. D.C.Code 1973, §§ 22–2901, –3202.

2. D.C.Code 1973, §§ 22–501, –3202.

3. Boykins was convicted of burglary in 1971.

4. Appellant assigns as error the fact that the waiver form which he signed was not re-

ceived in evidence at the hearing on the motion to suppress. However, the record shows that the paper was marked and identified and described by one of the federal agents who verified the signatures and outlined the circumstances surrounding its completion. On this record, we see no prejudicial error.

marized by the trial court in its memorandum opinion as follows:

> While being questioned by Agent Cummings, defendant stated that *he had confessed to police officers of the District of Columbia* that he and Jesse Harris had *robbed the Biggs' Liquor Store* on January 2, 1973. Defendant then *reiterated* his involvement in the robbery to Agent Cummings. At the conclusion of the interview the FBI agents in Norfolk were informed by their Washington office that a bench warrant had been issued for defendant when he failed to appear for his scheduled preliminary hearing in the present case on March 2, 1973. The agents then placed defendant under arrest. On March 9, 1973, prior to defendant's removal to the District of Columbia, Agent Cummings talked informally with the defendant in the cellblock at Norfolk. During their conversation defendant *volunteered information regarding Jesse Harris* which information further implicated defendant with respect to the Biggs' Liquor Store robbery. (Emphasis added.)

Appellant's basic argument is that any statement made by a represented criminal defendant in an interview by law enforcement officials after formal proceedings have been instituted against him must be suppressed unless his attorney is present or at least notified of the impending interview.

■ We will say, initially, that the government ordinarily should not communicate with a represented defendant without notice to, and permission of, the counsel. This has been stated to be the policy of the United States Attorney, *Ricks v. United States,* 118 U.S.App.D.C. 216, 222 n.18, 334 F.2d 964, 970 n.18 (1964). Here, if the local police had interviewed appellant about the liquor store robbery in the absence of, and without notice to, appellant's counsel we would be presented with a more difficult problem. But this did not occur.

Courts have reached different conclusions on variations of factual circumstances in relation to this question. *Compare, e. g., United States ex rel. O'Connor v. New Jersey,* 405 F.2d 632 (3d Cir.), cert. denied, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969), with *United States v. Cobbs,* 481 F.2d 196 (3d Cir.), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); *United States v. Durham,* 475 F.2d 208 (7th Cir. 1973); *United States v. Springer,* 460 F.2d 1344 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972), and cases cited therein. But while there may be differences on the results reached, the courts appear to be in agreement that it is a highly questionable governmental practice. Undoubtedly, too, the Bar would make itself heard if counsel, or their agents, were to make it a practice to interview, without advance notice to counsel, clients of opposing lawyers in civil or criminal cases. It would be of little moment to the Bar, we should imagine, that clients might have "knowingly and willingly" acceded to such interviews in their counsel's absence.[5] It is a matter of fundamental legal ethics that this not be done (American Bar Association, Code of Professional Responsibility DR 7-104).

■ Here, however, the FBI agents did not set out to interview appellant about the offense under review. The record shows no deliberate effort by the government to do so. The purpose of the interview with appellant was established to be in relation to a federal offense, the shooting of a high government official, and not the local liquor store robbery here involved—though, as indicated, the latter offense was discussed at some point in the interview. This may well have been because appellant's codefendant in the robbery was a

---

5. *See, e. g.,* the pithy dissent of now Justice Stevens in *United States v. Springer,* 460 F.2d 1344, 1354–55 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972).

prime suspect in the shooting of the government official. Additionally, as we noted earlier, appellant first cooperated and signed a *Miranda* waiver, which informed him of his right to have counsel present at the interview.

We conclude there was no prejudicial error under the circumstances here presented.

■ Finally, Boykins contends that the statements which he made in Norfolk should have been suppressed because they were products of his earlier confession which was suppressed. In support of this proposition, he asserts that the trial court misapplied the two-prong test described in *Darwin v. Connecticut*, 391 U.S. 346, 350–51, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968) (Harlan, J., concurring and dissenting) and adopted by this court in *Ruffin v. United States*, D.C.App., 293 A.2d 477, 480 (1972):[6]

A principal reason why a suspect might make a second or third confession is simply that, having already confessed once or twice, he might think he has little to lose by repetition. . . .

In consequence, when the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has, in my view, the burden of proving *not only* that the later confession was not itself the product of improper threats or promises or coercive conditions, *but also* that it was not directly produced by the existence of the earlier confession.

[391 U.S. 350–51, 88 S.Ct. 1488; emphasis added.]

We disagree with appellant's contention. The trial court held after a full hearing that (1) appellant's valid waiver of rights, (2) the significant separation in both time (ten days) and circumstances of the Norfolk statements from those which appellant made in Washington and (3) the intervening consultation with his counsel at the time of his presentment in this case were sufficient to dissipate the effect of the prior invalid confession. The principal evil in the *Darwin* situation as expressed by Justice Harlan, was that the defendant's probable feeling that he had little to lose was because his third confession followed his inadmissible second confession by only a few hours and the events surrounding the confessions formed a "continuous sequence." Here, there were ten days between the Washington statements and the first Norfolk statement, and no such continuous sequence can fairly be said to have arisen. The trial court noted, also, that appellant's execution of the waiver of rights form sufficiently dissipated the effects of his prior invalid confession to the local police under *Jackson v. United States*, 109 U.S.App.D.C. 233, 285 F.2d 675 (1960), *cert. denied*, 366 U.S. 941, 81 S.Ct. 1666, 6 L.Ed.2d 852 (1961).[7]

On the record before us, there is not sufficient reason to disturb the trial court's findings. We see no reversible error.

*Affirmed.*

---

6. In actuality the Superior Court did not specifically rely on *Darwin, supra,* or *Ruffin, supra,* but it did apply essentially the standards contained therein.

7. The trial court concluded that *Jackson, supra,* was not overruled by *Killough v. United States*, 114 U.S.App.D.C. 305, 315 F.2d 241 (1962), on this score and we agree.