**Reginald E. BUSSEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12623.**

District of Columbia Court of Appeals.

Submitted Sept. 28, 1978.

Decided Oct. 30, 1978.

Richard Whittington Whitlock, Arlington, Va., appointed by the court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, Edward C. McGuire, and William E. Bucknam, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KELLY, NEBEKER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was charged by indictment with robbery. D.C.Code 1973, § 22–2901. He filed a motion to suppress certain incriminating statements, which was denied. He was found guilty at the ensuing jury trial, and appeals from the denial of the motion to suppress. We affirm.

I

On April 9, 1976, Officer Rudolph Goddard of the Metropolitan Police Department

---

participated in the arrest of appellant and three others for a robbery which had occurred at St. Cecelia's School. Appellant and the others routinely were advised of their rights both at the time of arrest and at the station house; no statements were forthcoming at that time. That is the last contact Officer Goddard had with appellant until the encounter—some months later— which led to the circumstances now under consideration.

In the meantime, on the day following his arrest appellant was presented on the robbery charge and counsel was appointed to represent him. After a preliminary hearing and grand jury proceedings, at which police officers other than Officer Goddard testified, appellant was arraigned on July 6, 1976. He entered a plea of not guilty, and was released pending trial.

Shortly thereafter, in July of 1976, Officer Goddard was cruising in a marked patrol car. He saw appellant on a school playground, and drove onto the playground. Officer Goddard testified that at the time of that encounter he had not been involved in the case against appellant since the day of his arrest, but that he was aware that charges had been brought and that preliminary proceedings had transpired at which fellow officers had testified. He also stated that he assumed counsel had been appointed for appellant after his arrest.

There was some dispute as to the nature of the conversation which took place between Officer Goddard and appellant on the playground. Officer Goddard testified at the suppression hearing that appellant, without being beckoned, approached in a seemingly jovial mood and announced, "Man, the charges have been dropped." Appellant, on the other hand, testified that the officer initiated the encounter by pulling up to where appellant was walking and asking: "Did you get your charges dropped?" From that point on the two sides' accounts are similar. Both agree that after appellant announced that the charges had been dropped, Officer Goddard followed with something like: "Since you got your charges dropped, tell me—did you and

[the others] do it?" Appellant answered that yes, he had done it, and apparently he implicated the others as well. The two then went on talking (about unrelated matters) for some five or ten minutes. Appellant claimed that the whole exchange was mere "jawing" or joking—that both he and Officer Goddard were smiling and laughing throughout. Officer Goddard agreed that appellant seemed jovial and cocky, but that he (Goddard) was surprised by appellant's attitude and so—not having any information to the contrary—developed the distinct impression that the charges had in fact been dropped and that there was no other charge pending. Therefore, the officer felt free to ask a few questions about the robbery without deeming it necessary to remind appellant of his rights.

The motion to suppress the statements which appellant made to Officer Goddard during their encounter at the playground was heard and denied. The court, while acknowledging the variant descriptions of the encounter, concluded that:

> [T]his was a totally voluntary situation; . . . there was not trickery nor deliberate purpose or improper motive on the part of the police and that whether one treats the statements of the defendant as his joking, part of jawing or a response to the officer's questions, it was totally voluntary and despite the existence of an attorney-client relationship, was not violative of the defendant's rights.

Appellant argues that his Sixth Amendment right to the assistance of counsel was violated, and that his "voluntary" statements did not (or, indeed, could not) amount to an effective waiver of that right. We disagree on both counts.

## II

Both sides ground their arguments on principles enunciated by the Supreme Court in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and more recently in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Those cases are instructive, and we

agree with the government that the teachings of those cases (and of others decided by this court) mandate affirmance herein.

The petitioner in *Massiah, supra*, was indicted on a federal narcotics charge. He obtained a lawyer, pleaded not guilty, and was released on bail. Some time after petitioner's release, a federal agent arranged with a codefendant to put a listening device in the latter's car, and he was thus able to record incriminating statements made by petitioner to the codefendant while the two were conversing in the car. The statements were introduced at a trial which resulted in conviction. The Supreme Court, in reversing on the grounds of the inadmissibility of the statements, stated:

> [P]etitioner was denied the basic protections of the [Sixth Amendment] guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. [377 U.S. at 206, 84 S.Ct. at 1203.]

The *Massiah* Court found this to have been "indirect and surreptitious interrogation" which was no less objectionable on Sixth Amendment grounds than the postindictment interrogation at the police station which was struck down in *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). In both cases, the Court emphasized, the police had deliberately elicited a confession after indictments and retaining of counsel, and thus had infringed upon the defendants' right to representation by counsel. *Massiah, supra*, 377 U.S. at 204–07, 84 S.Ct. 1199.

The Court in *Brewer v. Williams, supra*, on similar grounds affirmed a federal district court habeas proceeding overturning an Iowa murder conviction. In *Brewer*, the police were fully aware that the defendant (an escapee from a mental institution who had turned himself in) had spoken with two attorneys who had both instructed him to remain silent. The police had specifically agreed with both attorneys not to question defendant during a four-hour car ride from the place of surrender to Des Moines. Furthermore, at the start of the ride the defendant informed the officers who were escorting him that he would "tell [them] the whole story" as soon as he got to see his lawyer in Des Moines. Nonetheless, the police succeeded during the course of the ride in getting the defendant to lead them to the victim's body, thus incriminating himself.

Despite the unquestionably custodial setting, the *Brewer* Court found those circumstances "constitutionally indistinguishable" from those presented in *Massiah*. In both cases there was "interrogation"—in the sense of a deliberate elicitation of an incriminating statement—after adversary criminal proceedings had been commenced and the defendant had retained counsel. 430 U.S. at 399–401, 97 S.Ct. 1232. Thus there was the same Sixth Amendment flaw in the police conduct in *Brewer* as there had been in *Massiah*.

The *Brewer* Court addressed and rejected the argument that although there had been a denial of assistance of counsel, the defendant had waived that Sixth Amendment right by voluntarily talking to the police. The Court found that under the circumstances the government had not met its burden of demonstrating a knowing and intelligent waiver. 430 U.S. at 402–05, 97 S.Ct. 1232. As Mr. Justice Powell made clear in his concurrence, the Court was not disposed to find a valid waiver where the incriminating statement had been elicited by "interrogation." He concluded that "as both federal courts below found, . . . there was no evidence of a knowing and voluntary waiver of the right to have counsel present beyond the fact that Williams ultimately confessed." *Id.*, at 412, 97 S.Ct. at 1246. The Court concluded that the mere fact that there had been a confession was insufficient, given all of the circumstances.

It is significant to note the following language of the *Brewer* Court:

> The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not*, without no-

tice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as we do, that he did not. [*Id.*, at 405–06, 97 S.Ct. at 1243 (footnote omitted).]

Mr. Justice Powell, using similar language, stated in his concurrence:

[T]he opinion of the Court is explicitly clear that the right to assistance of counsel may be waived, after it has attached, without notice to or consultation with counsel. [*Ante*, at 405–06.] We would have such a case here if petitioner had proved that the police officers refrained from coercion and interrogation, as they had agreed, and that Williams freely on his own initiative had confessed the crime. [*Id.*, at 413, 97 S.Ct. at 1246.]

The facts of the instant case [as found by the trial court and which have "substantial support in the evidence." *United States v. McNeil*, 140 U.S.App.D.C. 3, 6, 433 F.2d 1109, 1112 (1969)] are sufficiently distinguishable from those confronting the *Massiah* and *Brewer* Courts so as to lead us to the conclusion that appellant's statements were permissibly obtained.

 *Massiah* and *Brewer* do establish that a defendant may not be interrogated (directly or indirectly) and led into a supposed "waiver" of his Sixth Amendment right after that right accrues. However, the Court in *Massiah* implicitly, and in *Brewer* explicitly, made it clear that not all post-indictment incriminatory statements are objectionable on Sixth Amendment grounds. Here the trial court found that there was no deliberate elicitation of an admission of guilt, nor was there overreaching or coercion of any kind.[1] The chance encounter at the playground was not an "interrogation," and everything ap-

pellant said to Officer Goddard was voluntary. It was fully consistent with both the holding and the spirit of *Brewer, supra*, for the trial court to have found that appellant waived the protection of his right to have counsel present by his willingness to talk freely with the officer. *See* 430 U.S. at 406 n.11, 97 S.Ct. 1232 and cases cited therein; *see also King v. United States*, D.C.App., 370 A.2d 1370 (1977); *Boykins v. United States*, D.C.App., 366 A.2d 133 (1976). The trial court having committed no error of law, and its judgment being neither plainly wrong nor without evidence to support it, the ruling appealed from must be affirmed.[2] *See* D.C.Code 1973, § 17–305(a).

*Affirmed.*

---

1. Indeed, to the extent that there could be said to have been any deception in this case, it was practiced by appellant. The officer, having been led to believe that there no longer was an attorney-client relationship, could not be faulted for discussing the case with appellant. Thus, since the principal basis for the exclusionary rule is the deterrence of improper police conduct, no basis for applying it exists here.

2. For further support for this result in our prior treatment of waiver of Sixth Amendment rights generally, *see Judge v. United States*, D.C.App., 379 A.2d 966 (1977); *Thomas v. United States*, D.C.App., 351 A.2d 499 (1976); *Rosser v. United States*, D.C.App., 313 A.2d 876 (1974), and *Lawrence v. United States*, D.C.App., 224 A.2d 306 (1966).