Bernard G. WOODSON, Appellant,

v.

UNITED STATES, Appellee.

No. 83–1161.

District of Columbia Court of Appeals.
Submitted Dec. 11, 1984.
Decided Feb. 15, 1985.

Ted Kavrukov, Washington, D.C., appointed by the court, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Donald Allison, and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before PRYOR, Chief Judge, and BELSON and TERRY, Associate Judges.

PRYOR, Chief Judge:

Following a bench trial, appellant was convicted of one count of unauthorized use of a vehicle, D.C.Code § 22–2204 (1981). On appeal, appellant seeks reversal of his conviction on the ground that certain inculpatory statements that he made to the police should not have been admitted into evidence at trial because they were elicited in violation of his Sixth Amendment right to counsel and his Fifth Amendment (*Miranda*)[1] right to remain silent.[2] These statements formed the basis of appellant's conviction after a stipulated trial. We agree that appellant's Sixth Amendment right to counsel was violated and reverse.

I

Appellant was arrested at approximately 12:45 a.m., on October 7, 1982, by Officer David Dubeau of the Metropolitan Police Department's Fifth District, after appellant was spotted driving a car which had previously been reported as stolen. Appellant was taken to Fifth District headquarters where he was advised of his *Miranda* rights. Appellant refused to waive those rights and, accordingly, was not questioned by the police. He was then brought to court, an attorney was assigned to him, and he was presented on a charge of unauthorized use of a vehicle (UUV). The court released appellant into third party custody on the condition that he live at home.

On October 8, 1982, at approximately 2:00 p.m., appellant was again arrested after he was observed carrying a pistol. Following his arrest, Officer Benjamin Blake of the Fifth District brought appellant to Fifth District headquarters. Detective Al Folkman offered to help Officer Blake complete the paperwork on appellant. Detective Folkman testified at the suppression hearing that before he began the necessary paperwork appellant's mother requested to speak with him. Appellant's mother told Detective Folkman, among other things, that appellant had been arrested the night before on a stolen automobile charge. Detective Folkman testified further that as a result of his conversation with appellant's mother, the detective learned that appellant had been to court, had had an attorney appointed to represent him in the UUV matter, and had been released by the court.

Following her conversation with Detective Folkman, appellant's mother spoke with appellant. She returned to Detective Folkman and told him that appellant was willing to "talk." Detective Folkman advised appellant of his *Miranda* rights after which appellant executed a written waiver of his rights. Detective Folkman then asked appellant the following question: "Bernard do you wish to tell me about the pistol that you had today, and the cars that you have been involved with that are report [sic] stolen?" Appellant responded with a long answer which Detective Folkman typed in narrative form. In his statement, appellant admitted stealing cars, and implicated himself in the October 7 stolen car incident.

Appellant waived his right to a jury trial and, at a bench trial, stipulated to a set of facts which established his guilt of unauthorized use of a vehicle. This appeal followed.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Appellant also assigns as error the trial court's denial of his discovery motion. Appellant's counsel, relying on our decision in *Lewis v. United States,* 393 A.2d 109 (D.C.1978), *aff'd on rehearing,* 408 A.2d 303 (D.C.1979), requested discovery of the impeachable convictions of all government witnesses. The government objected to the request insofar as it pertained to law enforcement officers. We note that the govern-ment no longer objects to *Lewis* requests on these grounds.

    The record on appeal shows that subsequent to trial, and pursuant to appellant's request, the Federal Bureau of Investigation conducted a search of its records as to each of the police officers who testified. The search revealed no record of arrest for any of the officers.

    Accordingly, since no impeachment evidence was revealed which could have been used by appellant, the trial court's ruling, though erroneous, provides no basis for reversal.

## II

The trial court ruled that appellant's Sixth Amendment right to have counsel present during the October 8 interrogation was not abridged. We disagree.

The Supreme Court, noting the "vital need" for the assistance of counsel at the pretrial stage, has stated that

the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him....

*Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Court held that once judicial proceedings have been initiated against an individual, that individual's Sixth Amendment right to counsel is violated when admissions are subsequently elicited from him in the absence of counsel. *See also Edwards v. Arizona*, 451 U.S. 477, 480–81 n. 7, 101 S.Ct. 1880, 1882–83 n. 7, 68 L.Ed.2d 378 (1981).

Accordingly, our previous decisions have emphasized that individuals who have obtained counsel can be interrogated by the police only in the presence of counsel. *See, e.g., Bussey v. United States*, 395 A.2d 11, 14 (D.C.1978); *Shreeves v. United States*, 395 A.2d 774, 781–82 (D.C.1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); *Boykins v. United States*, 366 A.2d 133, 135 (D.C.1976); *cf. Wilson v. United States*, 444 A.2d 25, 30 (D.C.1982). In *Boykins*, we referred to interrogation outside the presence of an attorney, where counsel has been retained, as a "highly questionable governmental practice" and we cautioned that "the government ordinarily should not communicate with a represented defendant without notice to, and permission of, the counsel."

*Boykins v. United States, supra*, 366 A.2d at 135.

It is beyond argument that judicial proceedings respecting appellant's October 7 arrest had been initiated before appellant was interrogated by Detective Folkman on October 8. Following appellant's arrest on October 7, he was taken to court, assigned an attorney, and formally presented on the UUV charge. *See Brewer v. Williams, supra*, 430 U.S. at 398–99, 97 S.Ct. at 1239–40; *Wilson v. United States, supra*, 444 A.2d at 30; *Hill v. United States*, 434 A.2d 422, 430–31 (D.C.1981), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982).

Of particular significance in this instance is the fact that Detective Folkman's question to appellant, inquiring about the pistol and "the cars that you have been involved with that are report [sic] stolen," was designed to elicit information from appellant concerning the UUV charge.[3] *Cf. Boykins v. United States, supra*, 366 A.2d at 135 (F.B.I. agents did not deliberately interview appellant about the offense under review). The government, while conceding that Detective Folkman asked appellant expressly about the UUV, argues that this did not violate appellant's Sixth Amendment rights because there was no evidence that the police conduct was overbearing or deceptive. The Supreme Court rejected a similar argument in *Brewer v. Williams*.

In *Brewer*, the police had elicited incriminating statements from a defendant while transporting him, without counsel present, from one town to another after arraignment. The court concluded that whether the incriminating statements were elicited in a surreptitious manner is "constitutionally irrelevant." *Brewer v. Williams, supra*, 430 U.S. at 400, 97 S.Ct. at 1240; *see also McLeod v. Ohio*, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965) (per curiam); *United States v. Crisp*, 435 F.2d 354, 358 (7th Cir.1970), *cert. denied*, 402 U.S. 947,

---

3. Because Detective Folkman's question expressly inquired about the UUV incident, as well as the pistol incident, we do not need to reach the question of what Fifth and Sixth Amendment issues would have arisen had the question not been expressly directed at the UUV charge.

91 S.Ct. 1640, 29 L.Ed.2d 116 (1971). The significant focus for a reviewing court is the presence of " 'interrogation'—in the sense of deliberate elicitation of an incriminating statement—after adversary criminal proceedings had been commenced and the defendant had retained counsel." *Bussey v. United States, supra,* 395 A.2d at 13.

■ In the absence of a waiver, *see infra* Part III, we believe that, under these circumstances, the police should not have questioned appellant about the October 7 incident without appellant's attorney being present. Judicial proceedings had already been initiated against appellant concerning the UUV. An attorney had been appointed to represent appellant and had in fact already entered an appearance in the case. Moreover, there was undisputed testimony at the suppression hearing that the police who interrogated appellant knew that appellant had counsel in the UUV matter. Despite this knowledge, the police made no effort to contact appellant's attorney on October 8 either before or during the interrogation.

### III

Our inquiry does not end with a finding that appellant had a right to have his attorney present during the October 8 interrogation. We recognize that both the Supreme Court and this court have found that under certain circumstances an individual may waive the protection of his right to have counsel present during police interrogation conducted after judicial proceedings have commenced. *See, e.g., Brewer v. Williams, supra,* 430 U.S. at 404–06, 97 S.Ct. at 1242–43; *Shreeves v. United States, supra,* 395 A.2d at 780–81; *Bussey v. United States, supra,* 395 A.2d at 14. The government contends that under these facts appellant waived his right to have counsel present during the October 8 interrogation. We are not persuaded.

■ While a defendant, without prior consultation with his attorney, may waive his right to the presence of counsel after the right has attached, the government bears a heavy burden to demonstrate that there was in fact a knowing and intelligent relinquishment of that right. *Brewer v. Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242; *Shreeves v. United States, supra,* 395 A.2d at 781; *Bussey v. United States, supra,* 395 A.2d at 13.

In *Shreeves,* we held that to satisfy this heavy burden the government must demonstrate that (1) the defendant understood that in fact he had a right to the presence of counsel during an interrogation, and (2) that the defendant intentionally relinquished or abandoned that "known right." *Shreeves v. United States, supra,* 395 A.2d at 781 (citing *Brewer v. Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242, and *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

In reviewing the issue of waiver we must "indulge in every reasonable presumption against waiver of the right to counsel." *United States v. Weisz,* 231 U.S.App.D.C. 1, 5, 718 F.2d 413, 417 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984) (quoting *Brewer v. Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242). In light of this standard, and the "particular facts and circumstances surrounding th[is] case, including the experience, background, and conduct of the defendant," *Shreeves v. United States, supra,* 395 A.2d at 781; *see Johnson v. Zerbst, supra,* 304 U.S. at 464, 58 S.Ct. at 1023, the government did not satisfy its burden.

■ Appellant was given *Miranda* warnings following his arrest for the pistol incident on October 8, and subsequently signed a written waiver of his *Miranda* rights. The government thus contends that appellant's written waiver of his *Miranda* rights was also a waiver of appellant's right to counsel in the UUV matter. Even assuming *arguendo* that appellant's waiver of his *Miranda* rights following his arrest for the pistol offense was a "knowing and voluntary" waiver as to the weapons charge, *see Edwards v. Arizona, supra,* 451 U.S. at 482, 101 S.Ct. at 1883; *Brewer v. Wil-*

*liams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242, there is no showing that it was a "knowing and voluntary" waiver of his right to counsel with respect to the UUV.[4]

■ There is no evidence that appellant was informed or understood that his right to counsel in the UUV matter was distinct from any other rights he might have. The police never offered to call appellant's appointed attorney or, in advising appellant about his right to counsel, made reference to his appointed attorney by name. *Cf. Shreeves v. United States, supra,* 395 A.2d at 781 (finding no Sixth Amendment violation where appellant was advised twice of his right to have counsel present, and appellant refused both times, and where the police offered to call appellant's named attorney). Moreover, there is no evidence that appellant knew prior to waiving his *Miranda* rights and prior to interrogation that he was going to be questioned about the UUV incident.[5] Under these circumstances appellant was particularly susceptible to confusion concerning his "rights" respecting either or both of the charges. We thus are compelled to conclude that the government did not meet its burden of showing that appellant made a knowing and intelligent waiver of his Sixth Amendment right to have his counsel present during the interrogation about the UUV charge.

### IV

Appellant also argues that his statements should have been suppressed because they were elicited in violation of his Fifth Amendment rights. We recognize that under certain circumstances, questions of this nature raise Fifth Amendment issues as well. *See In re C.P.,* 411 A.2d 643, 649 n. 2 (D.C.) (Ferren, J., dissenting), *vacated,* 449 U.S. 945, 101 S.Ct. 345, 66 L.Ed.2d 210 (1980) (discussing interrelationship between Fifth and Sixth Amendment rights). Because we find that appellant's Sixth Amendment right to have counsel present during the October 8 interrogation was violated, we do not need to reach appellant's Fifth Amendment claim.

In conclusion, we hold that appellant's statement was elicited in violation of his Sixth Amendment right to counsel and should not have been admitted into evidence at trial. Accordingly, we reverse.

*So ordered.*

---

**4.** Our decision today should not be seen as an erosion of *Pettyjohn v. United States,* 136 U.S. App.D.C. 69, 419 F.2d 651 (1969), *cert. denied,* 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970). The court held in *Pettyjohn* that the defendant, "by waiving his *Miranda* right to silence and an attorney, and by agreeing to speak with the police, has thereby also waived any *Mallory* right to be brought before a magistrate 'as quickly as possible.'" *Id.* at 74, 419 F.2d at 656 (citing *Mallory v. United States,* 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957)). *Pettyjohn* stands for the proposition that a waiver of *Miranda* rights includes a waiver of *Mallory* rights *as to the same offense.*

In the case at bar, however, we hold that a suspect's waiver of his *Miranda* rights with respect to one offense does not extend to a second, unrelated offense which the suspect may also have committed.

**5.** The government argues that appellant's mother's statements to Detective Folkman concerning appellant's willingness to talk somehow constituted a "waiver" by appellant. We find this argument unpersuasive. Appellant's mother could not waive appellant's Sixth Amendment right to counsel on his behalf.