summary judgment on this claim was correctly granted.

The judgment against Mr. Houghton on the false imprisonment and abuse of process claims is reversed. The judgment against Mr. Houghton on the malicious prosecution claim and against Mrs. Houghton on all claims is affirmed. The case is remanded to the district court for further proceedings.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Gary Wayne HEWITT,
Defendant-Appellant.

No. 83-3329
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 30, 1984.

Francis Jerome Shea, P.A., Jacksonville, Fla., for defendant-appellant.

Robert W. Genzman, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

The appellant, Gary Wayne Hewitt, appeals from his conviction on two counts of importing a controlled substance, in violation of 21 U.S.C.A. §§ 952(a) and 960, and his conviction on possession of a controlled substance with intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1).

On January 14, 1983, while on routine patrol in an area between Jamaica and Cuba, a pilot of the United States Customs Service came in contact with an aircraft later identified to be a Cessna 207 operated by the defendant Hewitt. The aircraft was flying out of a "suspect area" and had not filed a flight plan. The Customs aircraft continued surveillance of the appellant's aircraft for approximately two and a half to three hours at which time another Customs aircraft was dispatched in an area near the south Bahamas and assumed the surveillance. This second Customs aircraft maintained surveillance of the appellant's aircraft until it was determined that the general heading of appellant's aircraft was in the direction of Ft. Pierce, Florida. A third Customs aircraft was dispatched from Homestead Air Force Base and made visual contact with appellant's aircraft at a point approximately five miles north of Nassau, the Bahamas. At this point it was confirmed that the general heading of appellant's aircraft was in the direction of the United States. At approximately 2:30 p.m. on January 14 the appellant's aircraft crossed the United States border at a point near Ft. Pierce, Florida. At the time, appellant failed to clear Customs as is required of all persons arriving from outside the country by aircraft. Instead, appellant continued flying inland in a northwesterly direction. At approximately 3:30 p.m. appellant's aircraft landed on a sod airstrip about four miles north of Kenansville, Florida. The Customs aircraft landed behind appellant's aircraft at which time the appellant's aircraft took off again. Meantime, another Customs aircraft had joined in the surveillance and maintained visual contact with the suspect aircraft. After approximately another ten minutes, appellant's aircraft again landed in a grassy field. One of the Customs aircraft landed behind appellant's aircraft while another maintained surveillance from the air. The Customs agent that landed observed appellant fleeing on foot into a nearby Palmetto grove. One of the Customs agents ran past the appellant's aircraft and while doing so observed through the pilot's window numerous bales wrapped in black plastic which, based on his previous years of service as a Customs agent, he suspected contained marijuana. Pursuant to his border search authority as a Customs officer, one of the agents entered the aircraft and seized the cargo. Approximately thirty minutes later Hewitt was arrested, he was searched, and several articles were discovered linking him to the suspect aircraft. These items included an airworthy certificate and registration for the aircraft, a fuel receipt from Melbourne, Florida, Municipal Airport dated January 13, 1983, bearing the name G. Hewitt, and the keys to the suspect aircraft.

Although appellant raises eight separate issues, his claims can be fairly summarized as follows: 1) his aircraft was seized over international waters in violation of the Fourth Amendment, 2) the search of the aircraft was unlawful, and 3) his arrest was unlawful. We find each of these arguments to be without merit.

With regard to the alleged seizure of the airplane in international waters we find no law to sustain such a contention. To the contrary, although not binding on this Court, the Eighth Circuit in reviewing a challenge to the installation of a beeper on an airplane reviewed the argument from an invasion of privacy standpoint and stated, "we do not believe anyone flying an airplane today can reasonably expect that he has a right to keep his flying, landing, or

takeoff location private." *United States v. Bruneau,* 594 F.2d 1190, 1197 (8th Cir.), *cert. denied,* 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979). We agree with this holding by the Eighth Circuit. Therefore, since it does not appear that Hewitt had any expectation of privacy in the location of his airplane, it is not necessary that we consider whether a seizure occurred prior to his landing in the United States. However, even if a privacy interest is assumed, Hewitt's claim that the Customs planes seized him and forced him to land in the United States must be rejected. The district court found that Hewitt was not forced by Customs to fly in any direction. Such a factual finding is not to be disturbed on appeal unless clearly erroneous. *Jurek v. Estelle,* 623 F.2d 929, 932 (5th Cir.1980) (en banc),[1] *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203, 450 U.S. 1014, 101 S.Ct. 1724, 68 L.Ed.2d 214 (1981). It was only in Hewitt's version of the events surrounding the surveillance that there was any mention that Customs planes came up on him and forced him to fly in the direction of the United States. The Customs pilots testified differently. It is well settled that a determination of the credibility of the testimony of the witnesses is in the province of the trial judge. *United States v. Kreczmer,* 636 F.2d 108, 110 (5th Cir. Unit B 1981). This Court will not disturb that finding.

Hewitt's contention that the airplane was unlawfully searched is completely without merit; once his plane crossed the border into the United States, the Customs pilots had the authority to conduct a warrantless search of its contents. *Almeida-Sanchez v. United States,* 413 U.S. 266, 272–73, 93 S.Ct. 2535, 2539–40, 37 L.Ed.2d 596 (1973). Such a search is reasonable for Fourth Amendment purposes simply because a border has been crossed. *United States v. Ramsey,* 431 U.S. 606, 616–17, 97 S.Ct. 1972, 1978–79, 52 L.Ed.2d 617 (1977). The mere fact that in this case the search did not technically occur at the border is

irrelevant; the point where Hewitt ultimately landed his aircraft is construed as the functional equivalent of the border. *See United States v. Stone,* 659 F.2d 569, 572 (5th Cir. Unit B 1981).[2]

Hewitt's arrest also reflects no constitutional violation. Probable cause to arrest is present where the facts and circumstances warrant a prudent person in believing that an offense has been committed. *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975). Certainly, on the basis of the various observations made by the pilots of the Customs service, beginning from the time the surveillance began until Hewitt ran into the thicket, there was more than sufficient probable cause to arrest. Furthermore, when the Customs agent saw the plastic bags in the plane and that information was relayed to the agents in pursuit of Hewitt, it was reasonable for the officers to infer that he was importing drugs and to arrest him on that basis.

Hewitt also objects to the denial of the jury's request for a dictionary during deliberations. This contention is frivolous.

AFFIRMED.

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

2. Decisions rendered after October 1, 1981, by a Former Fifth Circuit Unit B panel are binding on this Court. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).